CORDIS CORPORATION,
Plaintiff–Appellee,

v.

MEDTRONIC, INC.,
Defendant–Appellant.

No. 87–1186.

United States Court of Appeals,
Federal Circuit.

Dec. 15, 1987.

Granger Cook, Jr., Cook, Wetzel & Egan, Ltd., Chicago, Ill., argued for plaintiff-appellee. With him on the brief was Stephen B. Heller. Also on the brief was Henry W. Collins, Cordis Corp., Miami, Fla., of counsel.

Robert R. Edell, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minn., argued for defendant-appellant. With him on the brief was Albert L. Underhill. Also on the brief was Joseph F. Breimayer, Senior Patent Counsel, Med-

tronic, Inc., of Minneapolis, Minn., of counsel.

Before BISSELL, Circuit Judge,
MILLER, Senior Circuit Judge, and
ARCHER, Circuit Judge.

BISSELL, Circuit Judge.

This appeal is from an order of the District Court for the District of Minnesota, 2 USPQ2d 1845 (1986), preliminarily enjoining Medtronic, Inc. (Medtronic) from terminating its license agreement with Cordis Corporation (Cordis) for the manufacture, sale, and use of tined leads, pending the outcome of the underlying action. We affirm.

## BACKGROUND

Cordis, a manufacturer of medical devices, has been making and supplying cardiac pacemakers and related equipment such as cardiac pacing leads (endocardial leads) for at least twenty-four years. Medtronic owns two United States Patents, Nos. 3,902,501 ('501) and 3,939,843 ('843), both directed to endocardial leads that connect pacemakers to an interior surface of the heart. *See Medtronic, Inc. v. Daig Corp.,* 611 F.Supp. 1498, 1504-05, 227 USPQ 509, 511-12 (D.Minn.1985), *aff'd,* 789 F.2d 903, 229 USPQ 664 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 402, 93 L.Ed.2d 355 (1986).

In 1979, Cordis introduced two distinct types of leads. One included "tines" to aid in anchoring the lead to the heart wall, the other included "fins" which perform a similar function. By late 1980, Cordis realized that use of its "tined leads" raised a substantial question of patent infringement under Medtronic's '501 patent. Therefore, Cordis negotiated a license agreement with Medtronic. The agreement permitted Cordis to make, use, lease, and sell leads covered by the '501 and '843 patents.

In September 1984, Cordis filed suit against Medtronic seeking a declaratory judgment that the '501 and '843 patents were invalid, and that the license agreement between Cordis and Medtronic was void. Immediately Cordis moved for an order to establish an escrow account into which the royalty payments due Medtronic on the tined leads could be deposited during the litigation, and to enjoin Medtronic from terminating the license agreement during the pendency of the action.

The district court granted Cordis' motion. *Cordis Corp. v. Medtronic, Inc.,* 606 F.Supp. 132, 225 USPQ 135 (S.D.Fla.1985). We, however, vacated and remanded for further consideration. *Cordis Corp. v. Medtronic, Inc.,* 780 F.2d 991, 228 USPQ 189 (Fed.Cir.1985) [hereinafter *Cordis I*], *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1971, 90 L.Ed.2d 655 (1986). After remand, the district court dismissed the action without prejudice in light of this court's affirmance of the judgments of validity of the '501 patent in *Medtronic, Inc. v. Daig Corp.,* 611 F.Supp. 1498, 227 USPQ 509 (D.Minn. 1985), *aff'd,* 789 F.2d 903, 229 USPQ 664 (Fed.Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 402, 93 L.Ed.2d 355 (1986) and *Medtronic, Inc. v. Intermedics, Inc.,* No. G-80-295-Civ. (S.D.Tex.) *aff'd,* 799 F.2d 734, 230 USPQ 641 (Fed.Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987). Thus Cordis has paid, and continues to pay, all royalties due Medtronic on account of the "tined" leads under the license agreement.

In June 1986, some seven years after Cordis began to manufacture the finned leads and over four years after entering into the licensing agreement, Medtronic informed Cordis that Cordis' finned leads infringed the licensed patents and were subject to royalty payments under the license agreement as "Royalty Apparatus." Some two months later Medtronic advised Cordis that Medtronic intended to terminate the license agreement within 90 days due to the nonpayment by Cordis of royalties on the finned leads unless Cordis paid one million dollars for a paid-up, non-exclusive license for the finned leads. Medtronic has indicated that this payment would be for post-payment royalties only, and would not dispose of its claims against Cordis for past royalties or past infringement.

Faced with the loss of the tined lead license agreement because of its sale of

finned leads, Cordis filed this declaratory judgment action. The complaint set forth the following counts: Count I—Declaratory Judgment of Non-infringement; Count II—Declaratory Judgment of Unenforceability of Patents [on the grounds of laches or estoppel]; Counts III and IV—Declaratory Judgment for Declaration of Rights under License Agreement. Simultaneously, Cordis moved to preliminarily enjoin Medtronic from terminating, during the pendency of the litigation, the license for the tined leads due to Cordis' nonpayment of royalties on its manufacture and sale of finned leads. Medtronic appeals the district court's grant of Cordis' preliminary injunction motion.

## OPINION

### I.

■ "The initial question which must be resolved in any appeal is whether the appellate court has jurisdiction over the order or judgment of the district court from which appeal has been taken." *Rigaku Corp. v. Ferrofluidics Corp.*, 800 F.2d 1115, 1116, 231 USPQ 139, 140 (Fed.Cir.1986). This court has exclusive jurisdiction over the appeal of this interlocutory order if the district court had jurisdiction because the action arose, in whole or in part, under an Act of Congress relating to patents. 28 U.S.C. §§ 1292(c), 1295(a), 1338 (1982). Thus, we must determine whether the district court could have had subject matter jurisdiction under the patent laws in this declaratory judgment action involving a license agreement.

It is clear that a case is not within our "arising under" jurisdiction if the assertion of noninfringement is merely a defense to a state contract action brought by a licensor to enforce a license agreement. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 879, 219 USPQ 197, 201 (Fed.Cir.1983). However, the facts of this case are outside the parameters of the normal license agreement controversy in that neither the validity of a patent nor the validity of the license agreement is at issue. *See, e.g., Yarway Corp. v. Eur-Control USA, Inc.*, 775 F.2d 268, 227 USPQ 352 (Fed.Cir.1985); *Air*

*Products and Chemicals, Inc. v. Reichhold Chemicals, Inc.*, 755 F.2d 1559, 225 USPQ 121 (Fed.Cir.), *cert. dismissed*, 473 U.S. 929, 106 S.Ct. 22, 87 L.Ed.2d 700 (1985). Here the issues concern (1) infringement of valid patents by the accused devices, (2) coverage of the subject devices by the license agreement, and (3) the bar of laches or estoppel to an assertion of infringement.

■ In declaratory judgment patent suits, there are two prerequisites for establishing the existence of a case or actual controversy between the parties: first, the defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face an infringement suit or the threat of one if it commences or continues the activity in question; second, the plaintiff must have actually produced the accused device or have actually prepared to produce it. *Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398–99, 222 USPQ 943, 949 (Fed.Cir. 1984); *International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210, 206 USPQ 772, 775 (7th Cir.1980). It is undisputed that Cordis produces the accused device. Therefore, in order to resolve whether a case or controversy exists over which this court has appellate jurisdiction, we need only determine whether Cordis is under reasonable apprehension or threat of being sued for infringement under 35 U.S.C. §§ 271, 281 (1982).

■ In *C.R. Bard*, this court held:
that an examination of the totality of the circumstances must be made to determine whether there is a controversy arising under the patent laws. We hold that appellant ..., under the facts of this case, had a reasonable apprehension of an infringement suit even though the license agreement was still in effect. Thus, there was federal "arising under" jurisdiction under § 1338(a) and an actual controversy.

716 F.2d at 880, 219 USPQ at 203. An examination of the totality of the circumstances in this case makes clear that, prior to instituting the declaratory judgment ac-

tion, Cordis was under a reasonable apprehension of being sued for patent infringement. Medtronic had indicated that payment of one million dollars for the paid-up royalty on the finned leads would not operate to relieve Cordis of liability for past infringement. Thus, a genuine controversy arising under an Act of Congress relating to patents exists between the parties, and appellate jurisdiction lies in this court.

## II.

■ The purpose of an interlocutory injunction is to preserve the status quo and to protect the respective rights of the parties pending a determination on the merits. *Atlas Powder Co. v. Ireco Chemicals,* 773 F.2d 1230, 1232, 227 USPQ 289, 291 (Fed. Cir.1985); *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1578, 219 USPQ 686, 690 (Fed.Cir.), *cert. denied,* 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687, 220 USPQ 385 (1983). Because we exercise a very narrow scope of review over a district court's grant of injunctive relief, *Smith Int'l,* 718 F.2d at 1579, 219 USPQ at 691, the district court's determination can be overturned only on a showing that it abused its discretion, committed an error of law, or seriously misjudged the evidence. *Rogers v. Hill,* 289 U.S. 582, 587, 53 S.Ct. 731, 733-34, 77 L.Ed. 1385 (1933); *Medtronic, Inc. v. Gibbons,* 684 F.2d 565, 567 (8th Cir.1982).

In *Cordis I* this court stated:
The factors to be considered in granting a preliminary injunction in the Federal Circuit are the same as those of the [Eighth] Circuit. The district court must examine and balance the parties' asserted rights, the acts sought to be enjoined, the likelihood that the movant will prevail on the merits, the irreparable nature of the harm if the injunction is not granted, and whether the public interest is better served by issuing rather than denying the injunction.
780 F.2d at 994, 228 USPQ at 191 (citing *Smith Int'l,* 718 F.2d at 1579, 219 USPQ at 690-91; *S.J. Stile Associates Ltd. v. Snyder,* 68 C.C.P.A. 27, 646 F.2d 522, 525 (1981)); *accord Dataphase Sys., Inc. v. C L*

*Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981); *see generally Atlas Powder Co.,* 773 F.2d at 1232-34, 227 USPQ 291-93; *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 225 USPQ 345 (Fed.Cir.1985).

### A. *Irreparable Harm*

■ Medtronic contends that the district court's determination that Cordis would suffer irreparable harm unless a preliminary injunction issued is wrong as a matter of law; that the determination is contrary to this court's holding in *Cordis I;* also, that in *Cordis I* we held that neither loss of market share nor threats of possible patent litigation constitute irreparable harm. 780 F.2d at 996, 228 USPQ at 192. Therefore, the district court's finding of irreparable harm is incorrect under the doctrines of issue preclusion and *stare decisis.* We do not accept Medtronic's contentions.

If an issue was not litigated in a prior suit, obviously the doctrine of "issue preclusion" cannot apply. *See Young Engineers, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1314, 219 USPQ 1142, 1150 (Fed.Cir.1983). The facts in this case are in stark contrast with those of *Cordis I.* The district court found that *Cordis I:*
involved a challenge to Medtronic's patent, and sought to void the license agreement. The present case presents only the question of whether the license agreement includes finned leads. Cordis is not seeking to avoid royalty payments on the valid Medtronic tined leads under the agreement, but only to enjoin Medtronic from terminating the agreement until the issue of whether the finned leads come under the license agreement is resolved.
*Cordis Corp. v. Medtronic, Inc.,* 2 USPQ 2d 1845, 1849 (D.Minn.1986) [Available on WESTLAW DCT database]. We agree with the district court's determination that, under the particular facts and circumstances of the present case, the issue of irreparable harm was not litigated in *Cordis I.*

Medtronic also argues that even if the holding in *Cordis I* does not invoke issue preclusion, that decision and our decision in

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129, 231 USPQ 653 (Fed.Cir.1986), are still controlling precedent under the doctrine of *stare decisis* for the proposition that a licensee cannot avoid the natural consequences of a decision to stop paying royalties. In this action there has been no decision by Cordis to stop paying royalties. In accordance with the license agreement, Cordis continues to pay royalties to Medtronic on its tined leads; Cordis has never paid royalties to Medtronic on its finned leads—and if its interpretation of the license agreement is correct, Cordis never will pay royalties to Medtronic on the finned leads. Thus, Medtronic's reliance on *Cordis I* and *Intermedics* is totally unwarranted and does not preclude the district court from finding irreparable harm in this case.

Furthermore, Medtronic has been the beneficiary of a finding that in the highly competitive pacemaker industry, a loss in market share caused by an injunction could result in irreparable harm. *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946, 954, 215 USPQ 912, 917 (D.Minn.), *aff'd*, 664 F.2d 660 (8th Cir.1981) (Medtronic motion for preliminary injunction granted enjoining CRC from interfering with Medtronic's manufacture of lithium-iodine batteries). Thus, the trial court did not make legal error or abuse its discretion in concluding that termination of the license agreement would cause loss of market share and possible further litigation against Cordis and its customers for patent infringement, thereby irreparably injuring Cordis.

### B. *Balance of Injury, etc.*

■ In balancing the irreparable harm to Cordis against the injury to Medtronic, the district court carefully considered the arguments of both parties and found that the harm to Cordis if the motion was not granted outweighed the injury to Medtronic if it was. Also, the district court found that Cordis had met its burden of showing sufficient likelihood of success on the grounds that: (1) the finned leads do not infringe Medtronic's patents, (2) the finned leads were not within the definition of royalty

apparatus under the license agreement, and (3) Medtronic's conduct was an unreasonable and an unexcusable delay barring it from enforcing the patents against Cordis under the doctrines of laches or estoppel. In considering the public interest, the district court concluded that the patent system would not lose its integrity if the court granted injunctive relief. The court also determined that Cordis' continuing ability to produce pacemaker leads was an issue of public interest. In making these findings, the district court did not abuse its discretion, commit an error of law, or seriously misjudge the evidence.

### CONCLUSION

For the foregoing reasons, we affirm the district court order that Medtronic is preliminarily enjoined from terminating its license agreement with Cordis for the manufacture, sale, and use of tined leads pending the outcome of this litigation.

AFFIRMED.