JOHNSON & JOHNSON ORTHO-
PAEDICS, INC., a New Jersey
Corporation, Plaintiff,

v.

MINNESOTA MINING & MANUFAC-
TURING COMPANY, a Delaware
Corporation, Defendant.

Civ. A. No. 89–247–JJF.

United States District Court,
D. of Delaware.

July 13, 1989.

B. Wilson Redfearn of Tybout Redfearn & Pell, Wilmington, Del., Philip S. Johnson (argued), Henrik D. Parker and Liza D. Hohenschutz of Woodcock Washburn Kurtz MacKiewicz & Norris, Philadelphia, Pa., for plaintiff.

Charles S. Crompton, Jr. and Robert K. Payson of Potter Anderson & Corroon, Wilmington, Del., Frank P. Porcelli (argued), Gregory A. Madera, Robert C. Nabinger, Mark J. Hebert and Dorothy P. Whelan of Fish & Richardson, Boston, Mass., for defendant; Carolyn A. Bates, Office of Patent Counsel, 3M Center, St. Paul, Minn., of counsel.

## OPINION

FARNAN, District Judge.

This case is presently before the Court on defendant Minnesota Mining and Manufacturing Company's ("3M") motion for a temporary restraining order ("TRO"). Because the Court concludes that 3M has failed to establish irreparable injury, the Court will deny 3M's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Johnson & Johnson Orthopaedics, Inc. ("J & J") is the owner of all right and title to U.S. Patent No. 4,433,680 ("the '680 patent"), which relates to an improved polyurethane orthopaedic casting bandage used to form orthopaedic casts. Of particular relevance is the use of a dimorpholinodiethylether ("DMDEE") catalyst.

On March 1, 1985, J & J and 3M entered into a license agreement whereby J & J granted a nonexclusive license to 3M to manufacture, use, and sell synthetic casting bandages falling within the scope of claims of the '680 patent. In consideration therefore, 3M agreed to pay calculated royalties. The license agreement further provides that upon default by either party, the other party shall give written notice, and unless the default is cured within two months after notice is given, the party giving notice may give further written notice terminating the license agreement.

On May 16, 1989, J & J filed a complaint in this Court alleging breach of contract and seeking declaratory judgments of contract rights and infringement. J & J alleges that 1) since the beginning of 1987 through the present, 3M has been manufacturing and selling orthopaedic bandages using a so-called "MEMPE" catalyst; 2) these bandages are within the scope of the claims of the '680 patent; 3) and 3M has materially breached the terms of the license agreement by failing to pay royalties with respect to these bandages. On June 23, 1989, 3M filed a motion for summary judgment or, in the alternative, for a preliminary injunction to enjoin J & J from issuing a notice of termination of the license agreement.

On July 6, 1989, 3M filed the instant motion for a TRO, asserting that it believes J & J is likely to issue a notice of termination of the license agreement between the parties on July 18, 1989. In its motion, 3M seeks to restrain J & J from attempting to terminate the license agreement *and* to toll the time under the license agreement for 3M·to cure any default. 3M contends that its motion simply seeks to preserve the "status quo" between the parties under the license agreement pending a final adjudication on the merits.

### STANDARD FOR A TRO MOTION

Generally, the standards for granting a preliminary injunction and issuing a TRO are the same, the difference being solely

one of duration of the order. *See Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F.Supp. 655, 658 (D.Del.1987). Although courts have phrased the appropriate standard in a seemingly endless variety of ways, the relevant factors to be considered and balanced by the Court are essentially the same: 1) reasonable likelihood of success on the merits; 2) irreparable harm to the moving party in the absence of relief; 3) harm to the other parties if relief is granted; and 4) the public interest. *Compare Fechter v. HMW Industries, Inc.*, 879 F.2d 1111, 1116–17 (3d Cir.1989) *with Hybritech, Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1451 (Fed.Cir.1988).[1]

■ Although irreparable injury is only one of four "factors," a moving party's inability to establish irreparable injury is, alone, fatal to the motion. *Phillips Petroleum Co. v. United States Steel Corp.*, 616 F.Supp. 335, 337–38 (D.Del.1985). In addition, "irreparable injury" is pregnant with meaning. The harm must be "imminent," *Tree Tavern Products, Inc. v. Conagra, Inc.*, 640 F.Supp. 1263, 1272 (D.Del.1986); not otherwise compensable by money damages, *Frank's GMC Truck Center, Inc. v. GMC*, 847 F.2d 100, 102–03 (3d Cir.1988); "actual," *Phillips*, 616 F.Supp. at 338; and "sufficiently peculiar," *Coca-Cola Bottling of Elizabethtown v. Coca-Cola Co.*, 668 F.Supp. 906, 910 (D.Del.1987). The moving party must make a "clear showing of immediate irreparable injury" or a "presently existing actual threat," but an injunction will not issue merely to assuage the fears of the movant. *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir.1980). More succinctly put, "the injury contemplated must be real, not fancied; actual, not prospective; and threatened, not imagined." *Cordis Corp. v. Medtronic Inc.*, 2 U.S.P.Q.2d 1845, 1847 (D.Minn.1986), *aff'd*, 835 F.2d 859 (Fed.Cir.1987).

## DISCUSSION

The Court need only focus on the irreparable injury factor in its analysis of the instant motion. 3M has identified four distinct ways in which it claims it will be irreparably injured if a TRO does not issue. The Court will address each alleged injury.

■ First, 3M contends that without the TRO it will "immediately lose its only strategic alternative catalyst supply." Specifically, 3M argues that although it currently uses its own patented MEMPE catalyst, the DMDEE catalyst is an important strategic contingency which 3M cannot afford to lose if J & J terminates the license agreement. 3M argues that there exists a "real and constant danger" of a chemical accident at its MEMPE manufacturing plant and that DMDEE is the only other catalyst currently available to 3M. As the leading supplier of synthetic orthopaedic casting tapes in this country, 3M argues that it would incur a severe competitive disadvantage were it not able to switch to the DMDEE catalyst at any time.

J & J deems this alleged harm speculative and prospective. The Court agrees. Should J & J terminate the license agreement, 3M's use of the DMDEE catalyst

---

**1.** The Court notes that the requisite *degree* of likelihood or probability of success on the merits which the moving party must establish appears to vary among the different courts and even, in some instances, within the same court. *Compare, e.g., Phillips Petroleum Co. v. United States Steel Corp.*, 616 F.Supp. 335, 337 (D.Del. 1985) ("strong probability"); *Tootsie Roll*, 666 F.Supp. at 658 ("reasonable likelihood"); *Cordis Corp. v. Medtronic, Inc.*, 2 U.S.P.Q.2d 1845, 1850, 1986 WL 15722 (D.Minn.1986) ("some likelihood" but not necessarily greater than "50% likelihood"), *aff'd*, 835 F.2d 859 (Fed.Cir.1987); *International Kennel Club, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988) ("better than negligible chance").

Moreover, additional confusion exists, especially in a mixed contract/patent case such as this, concerning whether Federal Circuit or Third Circuit law governs the appropriate standard. *Hybritech*, 849 F.2d at 1451 n. 12. Were it necessary for the Court to reach the issue in this case, however, the Court would, based on the most recent Third Circuit and Federal Circuit opinions, apply the "reasonable likelihood" threshold. *See Fechter*, —— F.2d at ——; *Hybritech*, 849 F.2d at 1451.

The Court need not presently delve into this morass.

would infringe claims under the '680 patent. But 3M has represented that DMDEE is only an alternative, contingent catalyst to MEMPE. Although the Court recognizes that 3M may find itself in a risky position should it be unable to fall back on the DMDEE catalyst in the event of a MEMPE plant shutdown, such a threat is simply too speculative to warrant the relief that 3M seeks. The harm claimed by 3M is not imminent and actual, but rather contingent and remote. 3M has only demonstrated its business fears and not a "presently existing actual threat."

■ Second, 3M contends that if the Court fails to restrain J & J from terminating the license agreement, 3M's customers will "immediately be exposed to litigation by J & J" for infringement. J & J counters that its suit against 3M bars subsequent suits against 3M's customers, that J & J has no interest in or intention of suing 3M's customers, and that again the alleged harm is purely speculative.

The Court concludes that not only is this alleged harm contingent upon the potential future actions of J & J and therefore not a presently existing actual threat, but that 3M's argument fails for a more fundamental reason. Exposure of litigation against 3M's customers may well be a relevant consideration under the third factor for granting a TRO ("harm to other parties"), but it does not bear directly on the issue of irreparable harm to 3M.

■ Third, 3M contends that it faces an immediate loss of goodwill and reputation as the technological leader in the field and that J & J will attempt to divert 3M's goodwill to itself. Loss of goodwill is of course a relevant factor to be considered. However, the Court is not persuaded that J & J's threatened termination of the license agreement poses an actual, imminent threat of irreparable injury to 3M's goodwill. First, the Court must assume that 3M will continue to manufacture and sell the accused MEMPE catalyst even if the license agreement is terminated and at least until the instant action is fully resolved on the merits. Second, the Court simply cannot envision a substantial ero-

sion of the goodwill of the leader in the field during the pendency of this action. Were 3M a smaller entrant in the field, the Court might view the situation differently, but 3M is a well-established, substantial business entity and has not made a clear showing of immediate irreparable injury to its goodwill.

■ Fourth, 3M contends that it will immediately lose a fairly negotiated, valuable contract right to obligate J & J to investigate the unauthorized use of DMDEE by third party competitors. The Court finds 3M's argument to be unpersuasive because even though 3M may consider such a contractual right to be "valuable," exercise of that right is contingent upon some unauthorized use by a third party. Such remote, contingent, and speculative harm to 3M is simply not the type of injury for which TROs issue.

Moreover, case law in this district supports this conclusion. In *Phillips Petroleum Co. v. United States Steel Corp.*, 616 F.Supp. 335 (D.Del.1985), this Court, on analogous facts and based solely on the movant's failure to establish irreparable injury, denied a licensee's motion to preliminarily enjoin a patentee from terminating a license agreement. Analyzing two possible scenarios that could result if the motion were denied, the Court stated:

> If Himont [the licensee] continues to withhold royalties on the disputed products and succeeds in its assertion that the products are not covered by Phillips' [the patentee] patent, there would be no breach of the license agreement and any termination of that agreement would be deemed ineffective.... [U]nder this scenario, Himont would suffer no harm whatsoever. If, on the other hand, Himont yields to Phillips' demands and pays the contested royalties, its vindication on the merits may be less complete, for its ability to recoup the erroneously paid royalties is, under the current state of the law, uncertain.

*Phillips*, 616 F.Supp. at 338.

These two scenarios are similarly present here. If 3M continues to refuse to pay the

roughly $900,000 allegedly due and owing under the license agreement for 3M's use of the MEMPE catalyst, 3M would incur no harm at all if it ultimately succeeds on the merits. The more difficult scenario arises if 3M chooses to avoid J & J's threatened termination of the license agreement and "cure" the alleged default by paying the $900,000 prior to July 18. If 3M subsequently prevails on the merits, it is uncertain in this district whether 3M could recoup that money.[2]

3M attempts to distinguish *Phillips* by arguing that the licensee in that case failed to articulate specific ways in which it would be irreparably harmed. However, the Court has already dismissed 3M's specific claims of irreparable injury above. In addition, 3M argues that a case from the District of Minnesota, in which the court did issue a preliminary injunction enjoining a patentee from terminating a license agreement, is more on point than *Phillips*. *Cordis Corp. v. Medtronic Inc.*, 2 U.S.P.Q. 2d 1845 (D.Minn.1986), *aff'd*, 835 F.2d 859 (Fed.Cir.1987). However, on the specific issue of irreparable injury, *Cordis* is readily distinguishable. Both the Minnesota Court and the affirming Federal Circuit focused on the highly competitive nature of the pace-maker industry and how termination of the license agreement would cause loss of market share and irreparably injure Cordis. 2 U.S.P.Q.2d at 1848–50; 835 F.2d at 864. In the instant case, not only is 3M the dominant force in the field, but 3M apparently will continue to manufacture and sell products using the MEMPE catalyst regardless of J & J's threatened termination. Thus, any possible loss of market share in this instance is speculative at best.

## CONCLUSION

For all of the reasons stated above, 3M's motion for a temporary restraining order will be denied. Whether 3M decides to pay the allegedly due and owing royalties or not, the Court is convinced that any harm resulting to 3M is not actual and imminent, but rather contingent, remote, and speculative. An order consistent herewith will be entered.

---

**2.** The Court noted in *Phillips* that while it is clear that a licensee could not, absent special circumstances, recover paid royalties following a successful attack on the patent's *validity*, it would be a question of first impression in this district whether 3M could recover the paid royalties following a determination of *noninfringement*, which 3M argues in its motion for summary judgment. 616 F.Supp. at 338 n. 6.