**ABBOTT LABORATORIES,**
**Plaintiff–Appellant,**

v.

**NOVOPHARM LIMITED,**
**Defendant–Appellee.**

**ABBOTT LABORATORIES,**
**Plaintiff–Appellant,**

v.

**GENEVA PHARMACEUTICALS,**
**INC., Defendant–Appellee.**

Nos. 96–1299, 96–1311.

United States Court of Appeals,
Federal Circuit.

Jan. 14, 1997.

Daniel E. Reidy, Jones, Day, Reavis & Pogue, Chicago, IL, argued, for plaintiff-appellant. With him on the brief were James A. White and Tina M. Tabacchi. Of counsel on the brief were Kenneth D. Greisman, Abbott Laboratories, Abbott Park, IL; and J. Daniel Kiser, Terry S. Coleman, and Matthew D. Peterson, Fox, Bennett & Turner, Washington, DC.

Robert F. Green, Leydig, Voit & Mayer, Ltd., Chicago, IL, argued, for defendant-appellee Novopharm Limited. With him on the brief were Christopher T. Griffith and Jeffrey B. Burgan.

James Galbraith, Kenyon & Kenyon, of New York, New York, argued for defendant-appellee Geneva Pharmaceuticals, Inc. With him on the brief was Maria Luisa Palmese.

Before ARCHER, Chief Judge, RICH, Circuit Judge, and FRIEDMAN, Senior Circuit Judge.

ARCHER, Chief Judge.

Abbott Laboratories (Abbott) appeals the March 14, 1996 judgment of the United States District Court for the Northern District of Illinois, No. 95–C–6657, granting the summary judgment motions of defendants Novopharm Ltd. (Novopharm) and Geneva Pharmaceuticals, Inc. (Geneva). The district court held that United States Patent No. 4,112,097 (the '097 patent) expired on October 14, 1995 and accordingly dismissed Abbott's patent infringement complaint. Abbott also appeals the district court's order requiring that Abbott remove its principal patent from the Orange Book listing. We affirm.

## BACKGROUND

The invention at issue in this suit is terazosin hydrochloride, a drug for the treatment of hypertension and other ailments. On October 14, 1975, a patent application, Ser. No. 621,980 (the '980 application) was filed to the United States Patent and Trademark Office (PTO) claiming the compound terazosin hydrochloride. The resulting patent, United States Patent No. 4,026,894 (the '894 patent), was issued on May 31, 1977. The '894 patent has now expired.

On January 21, 1977, before the '894 patent issued, a second application, Ser. No. 760,895 (the '895 application) was filed, the specification of which was identical to the '980 application specification. The '895 application was amended to include: "This is a div. of application Ser. No. 621,980 filed October 14, 1975." The '895 application which issued as the '097 patent on September 5, 1978 stated: "This is a divisional of application Ser. No. 621,980 filed October 14, 1975, now U.S. Pat. No. 4,026,894." Abbott was assigned both the '894 patent and the '097 patent.

As required by 21 U.S.C. §§ 355(b)(1) and (c)(2) (1994), Abbott filed information regarding its '097 patent with the FDA which was published in its publication entitled "Approved Drug Products With Therapeutic Equivalence Evaluations" (the Orange Book). As a result of the subsequent enactment of the Uruguay Round Agreements Act (URAA), Pub.L. 103–465, 108 Stat. 4809 (1994) (codified as amended at 35 U.S.C. § 154 (West Supp.1996) (section 154)), the expiration date of the '097 patent was changed. Abbott informed the FDA of the change and reported the new patent expiration date as January 21, 1997, which the FDA published in its Orange Book.[1]

In 1995, Novopharm and Geneva each filed a New Drug Application with the FDA for permission to produce a generic version of terazosin hydrochloride. FDA approval was withheld due to the '097 patent listing in the Orange Book. Under 21 U.S.C. § 355(j)(4)(B)(iii) (1994), the FDA is prohibited from approving new drug applications for drugs which infringe a patent listed in the Orange Book for 30 months, or until resolution of the patent dispute.

On November 16, 1995, Abbott filed suit against Novopharm and Geneva claiming infringement of its '097 patent. Geneva counterclaimed for declaratory judgment that the '097 patent had expired and for an injunction requiring Abbott to take all the necessary steps to remove its expired '097 patent from the FDA Orange Book. Novopharm and Geneva subsequently moved for summary judgment that the '097 patent had expired.

The district court granted summary judgment in favor of Novopharm and Geneva on March 14, 1996, and dismissed Abbott's complaint on the grounds that the '097 patent had expired on October 14, 1995. The district court found that section 154(a) requires that the parent application filing date be used to calculate the patent's twenty year term. Thus, the expiration date was held to be twenty years after the filing of the '980 application on October 14, 1975.

Geneva later moved to amend the judgment to require Abbott to seek removal of the listing of its '097 patent from the FDA's Orange Book. The district court granted this motion on April 9, 1996, and ordered Abbott to remove the listing of its expired '097 patent from the FDA's Orange Book. The court found that its judgment "has little effect without the change in listing."

## DISCUSSION

### I.

■ We review the district court's grant of summary judgment *de novo,* with all justifiable factual inferences being drawn in favor of the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.

---

1. The FDA must accept as true the patent information supplied by the patentee, such as the patent expiration date. 21 C.F.R. § 314.53(f) (1996).

56(c). Statutory construction is a question of law which this court reviews *de novo.* *Romero v. United States,* 38 F.3d 1204, 1207 (Fed. Cir.1994).

▮ The district court's construction of the statutory provisions at issue in this case was correct. Section 154(c)(1) states:

> The term of a patent that is in force on or that results from an application filed before the date that is 6 months after the date of the enactment of the Uruguay Round Agreements Act [June 8, 1995] shall be the greater of the 20–year term as provided in subsection (a), or 17 years from grant, subject to any terminal disclaimers.

The '097 patent was in effect on June 8, 1995. To ascertain the starting point for the twenty year term, section 154(a) provides:

> (2) Term—Subject to the payment of fees under this title, such grant shall be for a term beginning on the date on which the patent issues and ending 20 years from the date on which the application for the patent was filed in the United States or, *if the application contains a specific reference to an earlier filed application or applications under section 120, 121, or 365(c) of this title, from the date on which the earliest such application was filed.*

(emphasis added). The effective starting date for the twenty year term therefore depends upon whether the application refers back to an earlier filed application in accordance with 35 U.S.C. §§ 120, 121, or 365(c). The '895 application at issue here clearly does so. Under section 121, a divisional application, such as the '895 application, is entitled to the benefits associated with the earlier filing date of its parent application if it meets the requirements of section 120. Under section 120, the application must be filed before the parent application matures into a patent and must contain a specific reference to the earlier filed parent application. 35 U.S.C. § 120 (1994). The district court correctly found that the '895 application referred back to its parent, the '980 applica-

tion, and that the '980 application was still pending when the '895 application was filed. Under these circumstances, section 154(a) mandates that the filing date of the parent application start the twenty year patent term.

Abbott's argument that it should not be bound by the earlier filing date because it received no benefit from the divisional application is not persuasive. The district court found that Abbott chose to designate its patent as divisional in order to receive the potential benefits associated with the earlier filing date.[2] Abbott's choice to do so cannot be disregarded simply because it subsequently found that the later filing date would be more advantageous. Abbott must accept the consequences as well as the potential benefits of the divisional status of the '895 application.

▮ We also agree with the district court that section 534(b)(3) of the URAA does not apply to the '097 patent. Section 534(b)(3) states:

> (3) Earliest Filing—The term of a patent granted on an application that is filed on or after the effective date described in subsection (a) [after January 1, 1996] and that contains a specific reference to an earlier application filed under the provisions of section 120, 121, or 365(c) of title 35, United States Code, shall be measured from the filing date of the earliest filed application.

By its unambiguous terms, section 534(b) only applies to patent applications filed after January 1, 1996. There is no support for Abbott's contention that this section was meant to delay the effective date of the URAA for earlier filed applications until January 1, 1996. Section 534(b) simply requires that the date of the earliest filed application for all patent applications filed after January 1, 1996 be used in calculating the twenty year term; that section has no applicability to applications filed before that date. Section 154 articulates the effective term for patents in effect on June 8, 1995. Therefore, we

---

**2.** Novopharm argues that Abbott did receive some benefit from its choice to make the '895 application a divisional application because, under its rules, the PTO, in determining patentabili-

ty, could use only references which antedated the filing date of the earlier parent application during prosecution of the '895 application.

affirm the district court's holding that the '097 patent expired on October 14, 1995.

## II.

 Abbott also appeals the district court's order that required Abbott to request removal of its '097 patent listing from the FDA Orange book. Abbott argues that the district court erred in assisting Geneva in circumventing the FDA's process. Pursuant to 21 U.S.C. § 355(j)(4)(B)(iii) (1994), when a patent holder brings an infringement suit, the FDA is prohibited from approving new drug applications for the production of generic drugs for 30 months or until the resolution of the patent litigation, whichever is sooner. Under the FDA regulations implementing this provision, the FDA will not approve the application until the time for taking an appeal has lapsed, or if an appeal is taken where the appeal has been decided. 21 C.F.R. §§ 314.107(b)(3)(ii), (e) (1996). Ordinarily, a favorable ruling by a district court would, therefore, not affect the status of a new drug application. *See id.*

Contrary to Abbott's arguments, the district court did not order the FDA to approve the Geneva or Novopharm new drug applications. The district court simply ordered Abbott to seek the removal of its expired patent from the Orange Book. Whether the FDA would honor this request and whether it would approve the new drug applications was left to the FDA to determine.

 The district court was properly concerned that its judgment would have "little effect" unless the Orange Book listing was removed. It took the least intrusive action to seek to enforce its judgment—merely ordering Abbott to remove the Orange Book listing. A district court has inherent power to order the parties to the litigation to act in a manner that will enforce its judgment. *See Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966); *Marshall v. Local Union No. 639*, 593 F.2d 1297, 1302 (D.C.Cir.1979); *Mims v. Duval County School Bd.*, 338 F.Supp. 1208, 1209 (M.D.Fla.1971) ("The Courts of the United States are empowered by Congress and, moreover, have the inherent power to enter such orders as may be necessary to enforce their judgments and decrees and to prevent interference with, and obstruction to, their operation."); 49 *C.J.S. Judgments* § 585 (1947) ("As a general rule, a party recovering judgment has the right to proceed to enforce it, and the court rendering judgment has inherent power to enforce it and to make such orders and issue such process as may be necessary to make it effective.").

The district court in this case did not commit legal error or abuse its discretion in ordering Abbott to request the FDA to act. Therefore, we affirm the order of the district court.

*AFFIRMED.*