MAYER, Circuit Judge *,
dissenting.
Because the filing of a New Drug Application (NDA) and subsequent listing of a pharmaceutical patent in the publication “Approved Drug Products With Therapeutic Equivalence Evaluations” (commonly referred to as the “Orange Book”) is conduct giving rise to a reasonable apprehension that an Abbreviated New Drug Application (ANDA) filer and declaratory judgment plaintiff will face a patent infringement suit, I respectfully dissent. '
I.
Our traditional two-part test to determine whether an actual controversy exists in a patent infringement suit requires that “(1) the declaratory plaintiff has acted, or has made preparations to act, in a way that could constitute infringement, and (2) the patentee has created in the declaratory plaintiff a reasonable apprehension that the patentee will bring suit if the activity in question continues.” Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1470 (Fed.Cir.1997). Under the Hatch-Waxman Amendments, which were enacted as part of the Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98-417, 98 Stat. 1585 (codified at 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. § 156, 271, 282), part one is satisfied in every instance where an ANDA is filed in accordance with 21 U.S.C. § 355(j), because 35 U.S.C. § 271(e)(2) provides that such a filing constitutes an act of infringement sufficiént to trigger a justiciable case or controversy. See Eli Lilly and Co. v. Medtronic, Inc., 496 U.S. 661, 676-78, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990) (determining that the purpose for creating an act of infringement in 35 U.S.C. § 271(e)(2) was to “eliminat[e] the de facto extension at the end of the patent term in the ease of drugs, and to enable new drugs to be marketed more cheaply and quickly”); Glaxo Inc. v. Novopharm Ltd., 110 F.3d 1562, 1569 (Fed.Cir.1997).
We have never said that the traditional two-part test must be satisfied in every instance to find a justiciable case or controversy. Conversely, we have consistently held that “there is no specific, all-purpose test” for determining the existence of a case or controversy, either. Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735-36 (Fed.Cir.1988) (describing the traditional two-part test as “often useful in evaluating complaints for declaratory judgments” but not mandatory in every instance). We have clarified that the “[sjatisfaction of this traditional two-part test is not, however, a prerequisite to jurisdiction in every possible patent declaratory judgment action. Indeed, the two elements merely assure that the declaratory plaintiff has enough interest in the subject matter of the suit and that the disagreement between the parties is real and immediate enough to fulfill the ‘actual controversy’ requirement.” Fina Oil, 123 F.3d at 1470.
Regardless of whether the two-part test is a constitutional necessity or not, the legislative history voices Congress’ intent to apply the “reasonáble apprehension” portion of the test in determining whether a court may determine the rights of an ANDA filer seeking relief. See H.R. Conf. Rep. No. 108-391, at 836 (2003) (“Through the modifications in this Act, the conferees do not intend for the courts to modify their application of the requirements under Article III that a declaratory judgment plaintiff must, to the extent required by the Constitution, demonstrate a ‘reasonable apprehension’ of suit to establish jurisdiction.”). “As in all cases our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve.” *1340 Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 608, 99- S.Ct. 1905, 60 L.Ed.2d 508 (1979).
II.
Because Teva filed an ANDA pursuant to 21 U.S.C. § 355© against Pfizer’s ’699 patent listed in the Orange Book, our application of the traditional test for an “actual controversy” turns solely on whether Pfizer has taken actions that give rise to a reasonable apprehension that it will sue Teva for infringement. The trial court dismissed Teva’s declaratory judgment claim saying that no “actual controversy” existed under the Declaratory Judgment Act because, it concluded, Teva faced no “reasonable apprehension” that Pfizer would bring suit against it for infringing the ’699 patent. Teva Pharms. USA, Inc. v. Pfizer, Inc., No. 03-CV-10167, 2003 WL 22888848 (D.Mass. Dec.8, 2003).
The 2003 amendments to the Hatch-Waxman Act provide for declaratory relief when an owner of a patent listed in the Orange Book fails to bring an infringement suit within 45 days after the ANDA is filed. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Title XI, Access to Affordable Pharmaceuticals, PL 108-173, 117 Stat.2066 (Dec. 8, 2003) (“Medicare Amendments”) (codified in pertinent part at 21 U.S.C. § 355©(5)(C)(i)). These Medicare Amendments also give courts the authority to exercise jurisdiction over declaratory judgment actions brought by generic in-fringers “to the extent consistent with the Constitution.” 35 U.S.C. § 271(e)(5) (2003).
The Declaratory Judgment Act authorizes declaratory relief only in a “ease of actual controversy.” 28 U.S.C. § 2201 (2000). This requirement is the same as the “case or controversy” requirement of Article III of the Constitution. See Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed.Cir.1995) (“The purpose of the declaratory action is to permit a threatened party to resolve its potential liability, but only when the relationship has progressed to an actual controversy, as required by Article III of the Constitution.”). The Supreme Court has long held “that whatever else the ‘case or controversy’ requirement embodied, its essence is a requirement of ‘injury in fact.’ ” Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 218, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) (citation omitted).
The Supreme Court also has established criteria for evaluating whether a case passes the constitutional threshold of being a “case or controversy.” In Nashville, Chattanooga & St. Louis Railway Co. v. Wallace, 288 U.S. 249, 259, 53 S.Ct. 345, 77 L.Ed. 730 (1933), the Court determined that it should “look not to the label which the Legislature has attached to the procedure followed in the state courts, or to the déseription of the judgment which is brought here for review, in popular parlance, as ‘declaratory,’ but to the nature of the proceeding which the statute authorizes, and the effect of the judgment rendered upon the rights which the appellant asserts.” Similarly, the Court in Aetna Life Insurance Co. v. Haworth decided that the federal Declaratory Judgment Act validly conferred jurisdiction on federal courts to issue declaratory judgments in appropriate cases. 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). The Court “observed that the controversy would admit ‘of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.’ ” Calderon v. Ashmus, 523 U.S. 740, 746, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (quoting Aetna, 300 U.S. at 241, 57 S.Ct. 461). Important to this case, the Court has “thus recognized the potential for declaratory *1341 judgment suits to fall outside the constitutional definition of a ‘case’ in Article III: a claim ‘brought before the court(s) for determination by such regular proceedings as are established by law or custom for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs.’ ” Id. (quoting Fairchild v. Hughes, 258 U.S. 126, 129, 42 S.Ct. 274, 66 L.Ed. 499 (1922)). Such is the scheme created by the jurisdictional directives of Congress in the enactment of Hatch-Wax-man and corresponding Medicare Amendments — -the key issue being whether' the courts are capable of achieving a final or conclusive determination that resolves the entire case or controversy.
Finding an actual controversy within the meaning of the Declaratory Judgment Act requires an analysis of the totality of the circumstances of each case. Gen-Probe Inc. v. Vysis, Inc., 359 F.3d 1376, 1379 (Fed.Cir.2004). The facts alleged must show a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Id. “Although the best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required.” Vanguard Research, Inc. v. Peat, Inc., 304 F.3d 1249, 1254 (Fed.Cir.2002) (citations omitted). Determining whether a reasonable apprehension of suit exists in a case controlled by the statutory and regulatory scheme of Hatch-Waxman requires a thorough analysis of the consequences and repercussions of each party’s actions.
The most important basis for finding a reasonable apprehension of suit is Pfizer’s listing of the ’699 patent in the Orange Book. Pfizer’s listing constituted an affirmative representation to the FDA and to competitors that “a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use or sale” of any generic sertraline hydrochloride drug covered by the claims of the ’699 patent. 21 U.S.C. § 355(b)(1) (2003). Although the listing in the Orange Book is a standard requirement for filing a NDA, it is a requirement that expresses a party’s future intent to enforce its patent rights against those who subsequently file an ANDA and infringe. We have explained that the “reasonable apprehension” test serves to “protect! ] quiescent patent owners against unwarranted litigation.” Arrowhead, 846 F.2d at 736. Pfizer is not a defendant that “has done nothing but obtain a patent.” Id. By listing its patent in accordance with 21 U.S.C. §§ 355(b)(1) & (c)(2), Pfizer has informed the world that the ’699 patent likely precludes anyone from marketing a generic sertraline hydrochloride product until it expires.
In evaluating whether there is a controversy, courts must take into account the injury that a generic drug manufacturer suffers when, as a result of actions taken by the brand-name manufacturer, it is delayed from marketing its product. Hatch-Waxman establishes that the first generic applicant to file an ANDA containing a Paragraph IV certification is eligible, in some situations, for 180 days of marketing exclusivity, during which the FDA may not approve subsequent ANDAs for other generic versions of the drug. 21 U.S.C. § 355(j)(5)(B)(iv). Under the 1984 version of the Act, the 180-day period begins to run as of the earlier of: (i) the first day of commercial marketing by the first generic applicant; or (ii) a “decision of á court ... holding the patent which is the subject of the [Paragraph IV certification] to be invalid or not infringed.” Id. § 355(j)(5)(B)(iv)(I-II). A court decision has been defined to include any district court decision obtained either by the first ANDA applicant or a subsequent ANDA applicant, through declaratory judgment *1342 or otherwise. See SM v. Barr Labs., Inc., 289 F.3d 775, 778 (Fed.Cir.2002). If the first ANDA applicant triggers the 180-day period and promptly brings its product to market, then it is permitted, for 180 days, to be the only generic competitor for the name-brand drug. If, instead, a subsequent ANDA applicant triggers the 180-day period by obtaining a court decision, and the first ANDA applicant does not market its drug during that period, then the FDA may approve subsequent AN-DAs, and the first ANDA applicant receives no exclusivity.
Although Congress’ intention was for Hatch-Waxman to promote competition and speed generic entry into the market, the opposite has occurred as a result of strategies to “park” the 180-day period. Brand-name drug manufacturers may enter into an agreement with the first ANDA applicant whereby the first ANDA applicant agrees to refrain from entering the market for some period of time if the brand-name firm forgoes suing subsequent ANDA applicants during the statutory 45-day period. Such a course of conduct precludes the FDA from approving any subsequent ANDA applicants until: (i) 180 days after the first ANDA applicant enters; (ii) the relevant patent expires; or (iii) a subsequent ANDA applicant can itself trigger the 180-day period. Essentially, the framework of Hatch-Waxman, combined with the conduct of the brand-name manufacturer, creates a cognizable injury to the subsequent generic ANDA filer. The delay created directly injures the subsequent ANDA applicant by depriving it of the opportunity to enter the market. The only way to eliminate this problem is for the subsequent ANDA applicant to bring a declaratory judgment action seeking a court decision of invalidity or noninfringement of the relevant patent.
Taking into account the specific regulatory context of the Hatch-Waxman regime, the “reasonable apprehension” test applied “to the extent consistent with the Constitution” is satisfied by Pfizer’s conduct. See H.R. Conf. Rep. No. 108-391, at 836 (2003) (“[A] declaratory judgment plaintiff must, to the extent required by the Constitution, demonstrate a ‘reasonable apprehension’ of suit to establish jurisdiction” and the courts should “examine as part of their analysis the particular policies served by the Hatch-Waxman Act.”). Cases arising under Hatch-Wax-man do not present a classic patent declaratory judgment suit, and accordingly, the reasonable apprehension test should not be applied in the traditional manner. See Fina Oil, 123 F.3d at 1470 (discussing classic patent declaratory judgment suits). Typically, a potential competitor is legally free to market its product in the face of an adversely-held patent. In contrast, within the Hatch-Waxman regime, a subsequent ANDA applicant is not free to market-the applicant may suffer direct legal injury and require judicial relief based on the ramifications of actions that a brand-name drug manufacturer has already taken concerning its patents and the likelihood of a future patent suit after the running of the 180-day period.
Against the backdrop of Hatch-Wax-man, the totality of Pfizer’s conduct must also be considered. See H.R. Conf. Rep. No. 108-391, at 836 (2003) (“In any given case, the conferees expect a court may or may not find a reasonable apprehension of suit where [an ANDA has been filed with a Paragraph IV certification and the paten-tee has not brought an infringement suit within 45 days].”). First, Pfizer sued Ivax, the first generic manufacturer of sertraline hydrochloride. This shows both Pfizer’s belief that its ’699 patent is valid and its intent to assert the patent against infring-ers. “Related litigation may be evidence of a reasonable apprehension.” Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 *1343 (Fed.Cir.1992). Pfizer also has a history of asserting its patent rights against in-fringers of other patents. Considering that the ’699 patent, which covers the brand name drug Zoloft ®, produced nearly 3 billion dollars in profit in 2002, economics and common sense dictate that Pfizer may well bring suit. Finally, Pfizer refused to grant Teva a covenant not to sue for infringement of the ’699 patent.
Allowing Teva’s declaratory judgment action is consistent with the “case or controversy” requirement of Article III of the Constitution because the suit will achieve a final determination that resolves the entire controversy between Teva and Pfizer. Subsequent ANDA applicants suffer a real and defined harm when uncertainty exists as to their rights to manufacture and sell a generic drug product free from infringement allegations. By permitting generic companies to bring declaratory judgment claims, Congress has not sought to create a hypothetical injury-in-fact; it has simply recognized the harm that exists absent such relief. Consequently, under the Hatch-Waxman regime, Teva’s injuries are traceable to Pfizer’s conduct and those injuries could be redressed by a favorable decision. Therefore, Teva maintains a reasonable apprehension of suit sufficient to confer jurisdiction under the Declaratory Judgment Act.

 Haldane Robert Mayer vacated the position of Chief Judge on December 24, 2004.